IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

LAUREN SMITH                                                                                    PLAINTIFF

v.                                                                    CIVIL ACTION NO. 1:26-cv-00006-RPC-RP

STATE FARM FIRE AND CASUALTY
COMPANY, SEEK NOW, INC., TIMBES
ADJUSTING & INSPECTING LLC, and
CHAD TIMBES                                                                                   DEFENDANTS

MEMORANDUM OPINION

Before the Court is Plaintiff Lauren Smith's [20] / [21] Renewed Motion to Remand to State Court filed on January 29, 2026. For the reasons stated below, Plaintiff's Motion to Remand is GRANTED. Because this action is remanded to state court, Defendants Chad Timbes and Timbes Adjusting & Inspecting, LLC's [8] / [9] Motion to Dismiss is DENIED AS MOOT.

I.      **Background**

A.      **Parties and Procedural History**

This action arises from the alleged wrongful denial and/or understatement of a homeowner's insurance claim. Plaintiff Lauren Smith (Smith) filed this action in the Circuit Court of Lee County, Mississippi, on December 1, 2025. *See* [2]. Smith is an adult resident and citizen of Mississippi. *Id.* Defendant State Farm Fire and Casualty Company (State Farm), the insurer, is a foreign insurance company authorized to do business in Mississippi with its principal place of business in Illinois, making it a citizen of Illinois for purposes of diversity jurisdiction. [1] ¶ 14.[1] State Farm insured Plaintiff's property at 113 Winchester Place in Saltillo, Mississippi under Policy No. 24-B1-M539-1. [2] ¶ 8.

---

[1] *See* 28 U.S.C. §1332(c)(1).

1

The Complaint alleges that Seek Now, Inc. (Seek Now) is a foreign corporation "engaged in the business of providing roof-inspection and 'ladder assist' services to property insurers." [2] ¶ 3. Seek Now is a corporation organized under the laws of Delaware with its principal place of business in Kentucky, making it a citizen of Kentucky for purposes of diversity jurisdiction. [1] ¶ 13.

Defendant Chad Timbes is an adult resident citizen of Alcorn County, Mississippi, believed to reside in or near the City of Corinth. [2] ¶ 4. Timbes Adjusting and Inspecting, LLC (Timbes Adjusting) is a Mississippi limited liability company registered to do business in the state. *Id.* at ¶ 5.[2] Chad Timbes is the sole member, manager, and registered agent of Timbes Adjusting. *Id.*[3]

On January 15, 2026, State Farm filed its Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. *See* [1]. State Farm argued in its Notice of Removal that the Timbes Defendnats were improperly joined to the state court action and that their citizenship should be disregarded. *Id.* at 4. On January 23, 2026, the Timbes Defendants filed their Motion to Dismiss. [8] / [9]. Plaintiff subsequently filed a [18] / [19] Motion to Stay or Defer Consideration on the Motion to Dismiss pending resolution of the [20] / [21] Motion to Remand. On February 2, 2026, United States Magistrate Judge Roy Percy granted the motion and stayed consideration of the Motion to Dismiss pending this Court's ruling on the Motion to Remand. *See* [22] ORDER.

**B.      Factual Allegations**

---

[2] The citizenship of an LLC is determined by the citizenship of all of its members. *Harvey v. Grey Worl Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008).

[3] Defendants Chad Timbes and Timbes Adjusting and Inspecting, LLC are often referred to in this opinion as "Timbes Defendants."

The Complaint alleges that Defendants State Farm, Seek Now, Chad Timbes, and Timbes Adjusting participated in a coordinated scheme to wrongfully deny or understate the value of Plaintiff's insurance claim following alleged damage to her home caused by a storm. *See* [2].

Plaintiff alleges that multiple portions of her home in Saltillo, Mississippi, were damaged by a hailstorm in June of 2024. [2] ¶ 13. At all relevant times, the home was insured under a State Farm homeowner's policy, Policy No. 24-B1-M539-1, which insured the property against sudden and accidental direct physical loss unless an exclusion applied. *Id*. ¶¶ 8-9. Plaintiff alleges that no exclusion for hail damage or any other legitimate exclusion applied to her claim and that she timely paid all premiums and satisfied all conditions precedent to coverage. *Id*. ¶¶ 11-12. According to the Complaint, Plaintiff observed damage to the roof shingles, fresh granule loss, and dents in the home's gutters and downspouts. *Id.* ¶ 15. After observing this damage, Plaintiff reported a claim to State Farm for hail and wind damage. *Id*. ¶ 17.

Plaintiff retained Michael Smith of GT Construction to inspect the property. *Id*. ¶ 18. Mr. Smith documented his inspection findings in a report attached to the Complaint as **Exhibit B**. *Id*. The report identified a wide variety of damage to the property that, in the inspector's opinion, was not the result of normal wear and tear. *Id*. ¶ 19(a)-(n). State Farm subsequently sent Seek Now, an adjusting and inspection vendor, to the property to evaluate the claim. *Id*. ¶ 23.

Plaintiff alleges that Seek Now instructed its retained field inspectors and entities used to process claims, including Chad Timbes and his company, to "tighten up" their conclusions when preparing inspection reports. *Id*. ¶ 27. According to Plaintiff, an internal communication, attached to the Complaint as **Exhibit C**, reflected Seek Now's directive to its inspectors to produce reports that minimized findings of damage and effectively supported the denial of claims. *Id.* This internal communication informed Seek Now's inspectors that State Farm represented approximately

3

"50%" of Seek Now's total contracted business, allegedly placing Seek Now "under explicit pressure to limit findings…to maintain favor with State Farm," which "undermined the credibility of [Seek Now's] reports to indicate a coordinated effort to understate or deny legitimate losses." *Id.* ¶¶ 27-28.

Plaintiff alleges that this coordinated effort to deny or understate claims is reflected in State Farm's partial denial letter, which is attached to the Complaint as **Exhibit D.** *Id.* ¶ 29. In that denial letter, State Farm informed Plaintiff that it would compensate her only $1,652.04 for damage to the gutters. *Id.* ¶ 30(a). State Farm refused to cover other damage to the home, categorizing such damage as "heat blisters," "wear, tear, and deterioration," and "other non-storm causes." *Id.* ¶ 30(b). Plaintiff contends that State Farm refused to provide her with the documentation that it based its denial of the claim on, categorizing such documentation as "internal work product." *Id.* ¶¶ 32-33.

The Complaint also contains specific allegations regarding Chad Timbes and Timbes Adjusting. According to Plaintiff, the Seek Now inspector assigned to inspect her property was Chad Timbes. [2] ¶ 44. Timbes allegedly worked in the same region referenced in Seek Now's internal directive instructing inspectors to "tighten up" their inspection findings. *Id.* Plaintiff alleges that, as a result of this directive, Timbes was "subject to company-wide pressure…including explicit instructions to 'tighten up' findings…and warnings that inspectors who documented significant damage risked losing future State Farm Assignments." *Id.* Plaintiff further alleges that Seek Now and Timbes "knew their findings would be relied upon by State Farm to adjust Plaintiff's [c]laim." *Id.* ¶ 45. According to the Complaint, the inspection report included "biased and incomplete information designed to serve State Farm's interest in reducing claim payouts." *Id.* ¶ 46.

4

Plaintiff alleges that this conduct was "willful, wanton, malicious, fraudulent, and in reckless disregard to Plaintiff's rights." *Id*. ¶ 48. Specifically, Plaintiff alleges that the Timbes Defendants breached their duty to exercise reasonable care in inspecting Plaintiff's property by failing to inspect all slopes and elevations thoroughly, failing to identify and document obvious hail strikes, failing to recognize and report functional hail damage to shingles and metal components, allowing financial and business pressures to compromise the objectivity of the inspection and reporting, mischaracterizing storm damage as cosmetic, wear and tear, or heat blisters inconsistent with the physical evidence, and failing to disclose the limitations, omissions, or bias in its inspection findings. [2] ¶¶ 88(a)-(d); 114(a)-(d); 120(a)-(e). Plaintiff concludes that these actions evidence gross negligence by the Timbes Defendants. *Id*. ¶ 89.

## II.     Analysis

### A.     Improper Joinder Standard

State Farm alleges in its Notice of Removal that the Timbes Defendants were improperly joined to this action and that this case belongs in federal court. [1] at 4. "Defendants may remove an action on the basis of diversity of citizenship if there is complete diversity between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum State." ***Lincoln Property Co. v. Roche***, 546 U.S. 81, 84, 126 S. Ct. 606, 163 L. Ed. 2d 415 (2005). Complete diversity means that "all persons on one side of the controversy [must] be citizens of different states than all persons on the other side." ***MidCap Media Fin., L.L.C. v. Pathway Data, Inc.***, 929 F.3d 310, 313 (5th Cir. 2019) (quoting ***McLaughlin v. Miss. Power Co.***, 376 F.3d 344, 353 (5th Cir. 2004)). Here, Plaintiff and the Timbes Defendants are both citizens of the State of Mississippi. Thus, complete diversity does not exist unless the Court disregards the citizenship of the Timbes Defendants under the doctrine of improper joinder.

The removal statute further provides that "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). If a defendant is not properly joined, however, then removal to federal court would be appropriate. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). As one court has explained, "[i]f the plaintiff improperly joins a non-diverse defendant, however, then the court may disregard the citizenship of that defendant, dismiss the non-diverse defendant from the case, and exercise subject matter jurisdiction over the remaining diverse defendant[s]." *Luckett v. Allstate Indem. Co.*, 2019 U.S. Dist. LEXIS 54942, at *9 (S.D. Miss. Mar. 30, 2019) (citing *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016)). If the Timbes Defendants were properly joined, complete diversity is lacking and remand is required under 28 U.S.C. § 1447(c). The parties do not dispute that Timbes and Timbes Adjusting are Mississippi residents for jurisdictional purposes. *See Smith v. Petsmart, Inc.*, 278 F. App'x 377, 379 (5th Cir. 2008). Accordingly, the Court considers whether the Timbes Defendants were improperly joined.

"There is a heavy burden of persuasion placed on a removing party who alleges fraudulent joinder." *Mooney v. Shelter Mut. Ins. Co.*, 2018 U.S. Dist. LEXIS 230642, at *2 (S.D. Miss. Mar. 12, 2018) (citing *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981)). To meet this heavy burden, the removing party—here, State Farm—"must show either that there is *no possibility* that [Smith] would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts." *Id.* (citations omitted) (emphasis added). This Court "does not determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but only look[s] for a

possibility that [Smith] might do so." *Id.* (citing *Burden v. General Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995)). "Because removal raises significant federalism concerns, the removal statute is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand." *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008).

Here, the Court addresses only the first method of improper joinder and asks "whether [Smith] has any possibility of recovery against the party whose joinder is questioned," here the Timbes Defendants. *Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003) (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)). "If there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved, then there is no [improper] joinder." *Id.*

Under *Smallwood,* "[t]he court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Smallwood*, 385 F.3d at 573. Any uncertainties in the substantive law must be resolved in favor of the plaintiff. *B., Inc.*, 663 F.2d at 549. "[I]f a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Smallwood*, 385 F.3d at 573. The relevant question is whether State Farm has shown that there is "no reasonable possibility of recovery against any of the non-diverse defendants" in state court. *Rogers v. Nationwide Prop. & Cas. Ins. Co.*, 433 F. Supp. 2d 772, 774 (S.D. Miss. 2006) (citing *Smallwood*, 385 F.3d at 573 (5th Cir. 2004)). A mere theoretical possibility of recovery is insufficient; rather, there must be at least "arguably a reasonable basis for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder." *Walton v. Tower Loan of Miss.*, 388 F. Supp. 2d 691, 692-93 (N.D. Miss. 2004) (citing *Travis*, 326 F.3d at 648; *Badon v. RJR Nabisco Inc.*, 224 F.3d 328, 386 (5th Cir. 2000)).

In conducting this analysis, courts apply federal pleading standards. The Fifth Circuit has clarified that a Rule 12(b)(6)-type improper-joinder analysis incorporates the pleading standards articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). *See Int'l Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd.*, 818 F.3d 193, 204 (5th Cir. 2016). Alternatively, the Court may exercise its discretion to "pierce the pleadings" and consider summary evidence when necessary to determine whether the plaintiff has a valid claim against the resident defendants. *Id.* at 207. This approach may be appropriate where the complaint "states a claim that satisfie[s] [Rule] 12(b)(6), but has misstated or omitted discrete facts that would determine the propriety of joinder." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 401 (5th Cir. 2013) (quoting *Smallwood,* 385 F.3d at 573).

Finally, to determine whether there is a possibility of recovery against the Timbes Defendants, "[t]he court should apply a Federal Rule of Civil Procedure 12(b)(6) standard; if the complaint is sufficient to state a claim, there is no improper joinder." *Cumpian v. Alcoa World Alumina, LLC*, 910 F.3d 216, 220 (5th Cir. 2018) (citation omitted). Likewise, "[i]f *at least* one claim against the non-diverse defendant survives Rule 12(b)(6) scrutiny, there is no improper joinder." *Dougay v. Dolgencorp of Tex.*, 2019 U.S. Dist. LEXIS 241556, at *4 (E.D. Tex. Nov. 21, 2019) (citing *Smallwood,* 385 F.3d at 573).

### B.    Negligence and Gross Negligence

Under Mississippi law, "an adjuster is not liable for simple negligence in adjusting a claim. He can only incur independent liability when his conduct constitutes gross negligence, malice, or reckless disregard for the rights of the insured." *Bass v. Cal. Life Ins. Co.,* 528 So. 2d 1087, 1090 (Miss. 1991) (citation omitted); *see also Gallagher Bassett Servs., Inc., v. Jeffcoat*, 887 So. 2d 777, 783 (Miss. 2004). This heightened gross-negligence standard applies to "an insurance

8

adjuster, agent, or similar entity" involved in the claims-handling process. *Gallagher*, 887 So. 2d at 784. The Mississippi Supreme Court has also recognized that an adjuster holds "a duty to investigate all relevant information and must make a realistic evaluation of the claim." *Bass*, 528 So. 2d at 1090.

Mississippi courts define gross negligence as "that course of conduct which, under the particular circumstance, discloses a reckless indifference to consequences without the exertion of any substantial effort to avoid them." *McAfee v. Allstate Ins. Co.*, 2019 U.S. Dist. LEXIS 167522, at \*25 (S.D. Miss. Sept. 29, 2019) (citing *Dame v. Estes*, 101 So. 2d 644, 645 (1958)); *see also Planters Wholesale Grocery v. Kincade*, 50 So. 2d 578 (Miss. 1951). "Gross negligence is synonymous with recklessness." *Id.* (citation omitted). "Reckless disregard also embraces willful or wanton conduct which means knowingly and intentionally doing the act." *Id.* (citing *Turner v. City of Ruleville*, 735 So. 2d 226 (Miss. 1999)); *Beta Beta Chapter of Beta Theta Pi Fraternity v. May*, 611 So. 2d 889 (Miss. 1992) (holding that willfulness and wantonness equate actual knowledge on the part of the individual charged).

Plaintiff's Complaint expressly alleges gross negligence against the Timbes Defendants. See [2] at 21 (Count IX: Negligence and Gross Negligence – Seek Now, Chad Timbes, and Timbes Adjusting); *Id.* at 25 (Count XVI: Negligence and Gross Negligence – Chad Timbes); *Id.* (Count XVII: Negligence and Gross Negligence – Timbes Adjusting, LLC). The relevant inquiry, therefore, is whether the Complaint alleges sufficient factual matter, accepted as true and in the light most favorable to Plaintiff, to state a plausible gross-negligence claim under federal pleading standards.

The Complaint alleges several specific facts relating to the conduct of the Timbes Defendants. According to the pleadings, Chad Timbes served as a field inspector assigned to

Plaintiff's claim by Seek Now. [2] ¶ 44. Plaintiff alleges that Seek Now issued an internal directive instructing inspectors to "tighten up" their claim conclusions and that the geographic region addressed by this directive included the area where Chad Timbes performed inspections. *Id.* Plaintiff further alleges that Timbes was subject to the pressures created by this internal directive and that the directive created a financial incentive for inspectors to minimize or deny storm damage. *Id.* The Complaint asserts that Timbes provided biased and incomplete information designed to serve State Farm's interest in reducing claim payouts and that State Farm relied on Timbes's inspection findings when denying Plaintiff's claim. *Id.* ¶¶ 46-47.

The Complaint also alleges that the Timbes Defendants owed Plaintiff a duty to exercise reasonable care in inspecting her property and accurately reporting the results of that inspection. *Id.* ¶ 87. According to Plaintiff, this duty was breached through several specific acts or omissions, including failing to inspect all slopes and elevations thoroughly, failing to document obvious hail strikes and other damage to the property, mischaracterizing or omitting visible damage, and allowing financial and business pressures to compromise the objectivity of reporting. *Id.* ¶ 88(a)-(d); *see also Id.* ¶¶ 113-14, 119-22. Plaintiff alleges that these actions constituted wrongful acts and omissions that were willful, wanton, malicious, fraudulent, and in reckless disregard of Plaintiff's rights and that this conduct was grossly negligent in light of the obviousness of the damage and foreseeable harm to Plaintiff. *Id.* ¶¶ 47, 89.

State Farm argues that these allegations are insufficient to state a plausible gross-negligence claim. [32] at 14. According to State Farm, "Plaintiff must plead facts that plausibly place Timbes and the LLC (Timbes Adjusting) in the narrow category of cases where a non-decision maker's conduct reflects a conscious indifference to consequences as opposed to a disagreement over the scope of storm damage." *Id.* State Farm contends that gross negligence is

10

"not established by re-labelling alleged negligence as 'obvious' or 'foreseeable.'" *Id.* at 15. It further characterizes the allegations in the Complaint that Timbes "knew or should have known" his inspection would be relied upon reflects, at most, ordinary negligence rather than the level of conscious indifference required under Mississippi law. *Id.*

In support of these arguments, State Farm relies on several cases in which courts rejected gross-negligence claims against insurance adjusters or similar persons involved in the claim handling process. See *Luckett v. Allstate Indem. Co.*, 2019 U.S. Dist. LEXIS 54942 (S.D. Miss. Mar. 30, 2019); *Slocum v. Allstate Ins. Co.*, 2020 U.S. Dist. LEXIS 12835 (S.D. Miss. Jan. 27, 2020); *Rogers v. Nationwide Prop. & Cas. Ins. Co.*, 433 F. Supp. 2d 772, 777 (S.D. Miss. 2006); *Wildmon v. EMC Nat'l Life Co.*, 2009 U.S. Dist. LEXIS 19240 (N.D. Miss. Mar. 11, 2009); *McAfee v. Allstate Ins. Co.*, 2019 U.S. Dist. LEXIS 167522 (S.D. Miss. Sept. 29, 2019). State Farm characterizes Plaintiff's allegations as merely a disagreement over the scope of storm damage and contends that courts applying Mississippi law routinely reject attempts to transform such disputes into claims for gross negligence.

Conversely, Plaintiff cites Mississippi district court cases applying the *Gallagher Bassett/Bass* gross negligence standard to those involved in the claim handling process, arguing that these decisions exhibit the willingness of courts to allow claims to proceed "where plaintiffs plead concrete, non-conclusory facts showing biased or outcome-driven inspections used to deny coverage." [21] at 10; *Forest Tire & Auto, LLC v. Catlin Specialty Ins. Co.*, 2020 U.S. Dist. LEXIS 155519 (S.D. Miss. Aug. 27, 2020); *Mooney v. Shelter Mut. Ins. Co.*, 2018 U.S. Dist. LEXIS 230642 (S.D. Miss. Mar. 12, 2018); *Smith v. Rimkus Consulting Grp., Inc.*, 2006 U.S. Dist. LEXIS 70691 (S.D. Miss. Sept. 12, 2006).

The Court agrees with Plaintiff that the Complaint asserts factual allegations against the Timbes Defendants, taken as true and in the light most favorable to her, that allow for a reasonable possibility of recovery. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004).

The cases cited by State Farm involve complaints containing only conclusory allegations or generalized assertions of wrongdoing without supporting factual detail. For example, in *Luckett*, the court concluded that the plaintiff alleged "no facts to suggest that [the adjuster] was grossly negligent," and instead relied only on the "conclusory allegation that [the adjuster] was also grossly negligent in this handling of the claim." *Luckett v. Allstate Indem. Co.*, 2019 U.S. Dist. LEXIS 54942, at *21-22 (S.D. Miss. Mar. 30, 2019). The court emphasized that "[m]erely reciting the words[] 'grossly negligent[]' in the [c]omplaint is insufficient to survive a Rule 12(b)(6) Motion under *Twombly*, *Iqbal*, and their progeny." *Id.* **at *22**. That is not the case here, as Plaintiff alleges specific actions by the Timbes Defendants and does not merely label their actions as grossly negligent without specifying what those actions were.

Similarly, in *Slocum v. Allstate Insurance Company*, 2020 U.S. Dist. LEXIS 12835, at *15-16 (S.D. Miss. Jan. 27, 2020), the complaint merely alleged that the adjuster's actions constituted "bad faith adjusting and gross negligence and in reckless disregard of Plaintiff's rights," without identifying any specific conduct attributable to the adjuster. The court explained that the complaint "lump[ed] all Defendants together and [made] no differentiation between Defendants as to any action taken." *Id*. That is not the case here. Instead, Smith alleges specific acts by the Timbes Defendants and does not use "adjectives" that "are merely labels" or "only legal conclusions," which was disfavored and led to the denial of the motion to remand in *Slocum*. *Id*.

*Rogers v. Nationwide Property & Casualty Insurance Company*, 433 F. Supp. 2d 772 (S.D. Miss. 2006) involved similar pleading deficiencies. There, the complaint was "replete with their conclusory allegation that [the adjuster] engaged in conduct which was intentional, grossly negligent, or in reckless disregard for their rights; but…they fail[ed] to identify *any* conduct that would so qualify." *Id.* at 777 (emphasis in original). The only allegation in *Rogers* relating to the adjuster was the plaintiffs' allegation that the adjuster and Nationwide engaged in conduct intended to delay and/or deny the plaintiffs' claim, such as requiring the plaintiff to submit to additional qualifying tasks and numerous inspections during the claim process. *Id.* The court concluded that these acts were insufficient to establish a claim for gross negligence.[4]

In *Wildmon v. EMC National Life Company*, 2009 U.S. Dist. LEXIS 19240 (N.D. Miss. Mar. 11, 2009), the court concluded that the plaintiff did "not allege any specific facts suggesting involvement by [the insurance agents] in investigating, adjusting or denying their claim." *Id.* at *13*. Similarly, in *McAfee v. Allstate Insurance Company*, 2019 U.S. Dist. LEXIS 167522 (S.D. Miss. Sept. 29, 2019), the complaint alleged conduct beyond the control of the adjuster and agent, such as denying claims or disbursing funds, which were actions solely within the authority of the insurer.

In contrast, the allegations in this case more closely resemble those found sufficient in other federal cases applying Mississippi law allowing gross-negligence claims against claim-handling participants to proceed.

---

[4] "Merely requiring insureds to allow inspections—even numerous inspections—of the insured property, to provide information regarding their financial condition and to submit to examinations under oath hardly qualifies as intentional or reckless misconduct. Rather, all of these additional qualifying tasks…were required of [the plaintiffs] by [the adjuster] in his adjustment of their claim are manifestly legitimate aspects of any fire loss investigation." *Id.* at 777.

For example, in ***Forest Tire & Auto, LLC v. Catlin Specialty Insurance Company***, 2020 U.S. Dist. LEXIS 155519 (S.D. Miss. Aug. 27, 2020), the plaintiff alleged that the "[d]efendants colluded to produce a false engineering report and deny the claim." ***Id.* at \*2**. The complaint alleged that the adjuster ignored obvious damage to the building and other evidence, that the defendant-adjusters were hired because of their reputation of denying claims, and that the defendant's opinions were knowingly false or were formed with reckless indifference to the truth. ***Id.* at \* 3-4**, **8**. The court specifically pointed out that the plaintiff "listed the ways the report was incorrect, some of which—if believed—could plausibly support a gross-negligence claim." ***Id*. at \*8.** The complaint adequately pleaded "factual allegations" and alleged "willful, malicious act of gross and reckless disregard for Plaintiff's rights as insured" in violation of the adjusters "duty to investigate all relevant information and make a realistic evaluation of the claim." ***Id*. (citing ***Bass,*** 528 So. 2d at 1089).

Similarly, in ***Mooney v. Shelter Mutual Insurance Company***, 2018 U.S. Dist. LEXIS 230642 (S.D. Miss. Mar. 12, 2018), the plaintiff "certainly pleaded sufficient factual allegations to support a bad faith adjusting claim" because "[s]he claim[ed] that [inspector's/adjuster's] engineering report included many inaccuracies, which she enumerate[d] in her complaint." ***Id.* at \*5**. The court explained that, as pled, the allegations against the defendant "would fall below the standard of making a 'realistic evaluation of the claim' and would constitute 'gross negligence, malice, or reckless disregard' for the Plaintiff's rights." ***Id.* (citing *Bass*, 528 So.2d at 1090).

In this case, Smith also specifically enumerates those inaccuracies which, as pleaded, would fall below the standard of making a realistic evaluation of the claim. Those enumerated inaccuracies include: failing to inspect all slopes and elevations thoroughly, failing to identify and document obvious hail strikes, failing to recognize and report functional hail damage to shingles

14

and metal components, allowing financial and business pressures to compromise the objectivity of the inspection and reporting, mischaracterizing storm damage as cosmetic, wear and tear, or heat blisters inconsistent with the physical evidence, and failing to disclose the limitations, omissions, or bias in its inspection findings. [2] ¶¶ 88(a)-(d); 114(a)-(d); 120(a)-(e). These allegations, taken as true, describe conduct that could plausibly fall below the duty recognized in *Bass* to "investigate all relevant information and…make a realistic evaluation of the claim." ***Bass****,* 528 So. 2d at 1090.

At this stage, the Court does not determine whether Plaintiff will ultimately prevail on the merits. Instead, the Court asks only whether there exists a reasonable possibility that Mississippi law might impose liability based on the facts alleged. ***Smallwood v. Ill. Cent. R.R. Co.***, 385 F.3d 568, 573 (5th Cir. 2004). Viewing the allegations in the light most favorable to Plaintiff, the Court concludes that such a possibility exists. Accordingly, State Farm has not met its heavy burden of demonstrating that the Timbes Defendants were improperly joined.

### C.     Other Claims

Plaintiff asserts numerous additional claims against the Defendants. However, "because the defendants have not established [the Timbes Defendants] [were] improperly joined with respect to the plaintiff's claim for [gross negligence], the Court need not analyze [Plaintiff's] other claims for the purpose of the improper joinder issue." ***Wheeler v. UMB Bank, N.A.***, 644 B.R. 121, 133 (N.D. Miss. 2024) (citation omitted). Accordingly, because the Court concludes that Plaintiff has stated at least one potentially viable claim against the non-diverse Timbes Defendants, the Court need not address Plaintiff's remaining claims for purposes of the improper-joinder analysis.

### D.     Fees and Costs Pursuant to 28 U.S.C. § 1447(c)

Plaintiff also seeks an award of costs and attorneys' fees incurred as a result of the removal pursuant to 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees

15

under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141, 126 S. Ct. 704, 163 L. Ed. 2d 547 (2005). Conversely, "[i]f the removing party could conclude from th[e] case law that its position was not an unreasonable one at the time of removal, then it had an objectively reasonable basis for removal." *Thomas v. S. Farm. Bureau Life Ins. Co.*, 751 F. App'x 538, 540 (5th Cir. 2018) (citation omitted). Here, although the Court ultimately concludes that remand is appropriate, the Court finds that State Farm had an objectively reasonable basis for removal and denies Plaintiff's request for fees under 28 U.S.C. § 1447(c).

### E.      Motion to Dismiss

Because the Court grants Plaintiff's Renewed Motion to Remand, the Timbes Defendants' [8] / [9] Motion to Dismiss is denied as moot. *See Coleman v. Crum & Foster Holdings Corp.*, 2014 U.S. Dist. LEXIS 187751 at *9 (S.D. Miss. Sept. 14, 2014).

### III.    Conclusion

The Court has considered all arguments raised by the parties. Those not specifically addressed in this memorandum opinion would not have changed the outcome or the Court's conclusions. For the reasons stated above, Plaintiff's [20] Renewed Motion to Remand is **GRANTED**, the Timbes Defendants' [8] Motion to Dismiss is **DENIED AS MOOT**, and this action shall be **REMANDED** to the Circuit Court of Lee County, Mississippi.

SO ORDERED, this the 17th day of March, 2026.

*Robert P. Chamberlin*
UNITED STATES DISTRICT JUDGE

16